# United States District Court
# District of Massachusetts

_____
                                        )
In Re                                   )
                                        )
DAVID A. MARRON AND ROBIN H.            )
SOROKO-MARRON,                          )
        Debtors                         )
_____ )
                                        )
DAVID M. NICKLESS, trustee,             )
        Plaintiff - Appellant,          )
                                        )
        v.                              )
                                        )        **Case No. 12-40036-TSH**
HSBC BANK USA, NATIONAL                 )
ASSOCIATION, as Indenture Trustee of the)
Fieldstone Mortgage Investment Trust, Series )
2005-2; MORTGAGE ELECTRONIC            )
REGISTRATION SYSTEMS, INC.; U.S.        )
BANCORP; and U.S. BANK TRUST            )
COMPANY, NATIONAL ASSOCIATION,          )
        Defendants - Appellees.         )
_____ )

## MEMORANDUM AND ORDER ON APPEAL FROM BANKRUPTCY COURT
### September 30, 2013

**HILLMAN, D.J.**

### Nature of the Proceeding

This is an appeal from a final order of the United States Bankruptcy Court for the District

of Massachusetts in an adversarial proceeding brought by David M. Nickless, Trustee (the

"Trustee") against the HSBC Bank USA, National Association, as Indenture Trustee of the

Fieldstone Mortgage Investment Trust, Series 2005-2 ("HSBC"), Mortgage Electronic

Registration Systems, Inc. ("MERS"), U.S. Bancorp, and U.S. Bank Trust Company, National

Association ("U.S. Bank") (collectively, the "Defendants").

## Background

The facts of this case are essentially uncontested. In July 2009, Robin H. Soroko-Marron

("Soroko-Marron") executed a promissory note for $316,000 (the "Note") and a second

promissory note for $79,000, payable to Fieldstone Mortgage Company ("Fieldstone"). These

notes were secured by a first mortgage (the "Mortgage") and second mortgage (the "Second

Mortgage") on her property located at 25 Mears Farm Road in Haverhill Massachusetts (the

"Property") granted to MERS as nominee for Fieldstone and its successors and assigns.[1] Both

mortgages were recorded in the Essex County Registry of Deeds.

In March 2007 Fieldstone Investment Corporation, Fieldstone's parent company, merged

with Credit-Based Asset Servicing and Securitization LLC ("C-Bass"). In November 2007

Fieldstone filed a Chapter 11 petition in the United States Bankruptcy Court for the District of

Maryland. In June 2008 the Bankruptcy Court approved Fieldstone's motion to reject its

executory contracts, including its contract with MERSCORP, the parent company of MERS.

In 2007 Soroko-Marron defaulted on the Mortgage. In April 2009, MERS executed an

assignment of the Mortgage to HSBC. The assignment was recorded in the Essex County

Registry of Deeds. When HSBC began the collection process it found that both Soroko-Marron

and her husband, David Marron (together, the "Marrons"), held title to the Property, but only

Soroko-Marron had granted the Mortgage. HSBC then filed as action in the Massachusetts Land

Court to correct this, and in December 2009 the Land Court entered a judgment requiring the

---

[1] The Mortgage notes that MERS, as nominee, holds only legal title to the interests granted by Borrower, but has the right to "exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender, including, but not limited to, releasing and canceling this Security Interest."

Marrons to give MERS a confirmatory mortgage (the "Confirmatory Mortgage") listing both of the Marrons as mortgagors. When the Marrons did not comply with this order, the Land Court permitted HSBC's attorney to execute the Confirmatory Mortgage for them. In July 2010 MERS executed an assignment of the Confirmatory Mortgage to HSBC, which HSBC recorded.

In November 2010 C-Bass filed for bankruptcy and filed a motion to abandon some of its assets, including an asset called "Fieldstone Mortgage Investment Trust, Series 2005-2," to the "Owner/Trustee" identified in the attachment to the motion as U.S. Bank. The Bankruptcy Court allowed this motion on December 20, 2010.

On October 29, 2010 the Marrons filed for bankruptcy under Chapter 7. On December 6, 2010 HSBC filed a motion for relief from the automatic stay so it would be allowed to foreclose. In this motion, HSBC identified itself as the Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2005-2. The Bankruptcy Court allowed the motion on June 29, 2011 and denied a motion for reconsideration. HSBC recorded its foreclosure deed on March 9, 2012.

On March 9, 2011 the Trustee filed an adversary proceeding seeking declaratory and other relief from the Bankruptcy Court. Specifically, the Trustee asked the Bankruptcy Court to make the following findings:

1. that the Mortgage and the Confirmatory Mortgage are invalid because (i) Fieldstone did not accept them (Count I), (ii) Fieldstone's rejection of its contract with MERSCORP eliminated MERS' right to assign mortgages (Count II), (iii) restrictions on MERS's rights of alienation prohibit MERS from transferring its interest in mortgages without a license by a court (Count III); and (iv) the trustee's strong-arm powers under Bankruptcy Code § 544 allow him to avoid the First Mortgage (Count IV);

2.  that the Mortgage and Confirmatory Mortgage should be subordinated under

    Bankruptcy Code § 510(c)(1) because of Fieldstone's rejection of the MERSCORP

    contract (Count V);

3.  that the Land Court settlement, judgment, and amended judgment are void because

    they violated the automatic stay in place due to Fieldstone's bankruptcy case (Count

    VI); and

4.  that HSBC is not the holder of the Note and has thus been unjustly enriched by

    payments from the Marrons.

The Defendants moved to dismiss the action. The Bankruptcy Court dismissed all counts of the

complaint on January 9, 2012 and denied the Trustees motion for reconsideration. The Trustee

now appeals that decision to this Court.[2]  The Trustee argues the Bankruptcy Court erred in the

following ways:

1.  it did not properly apply the standard for a Motion to Dismissed under Fed.R.Civ.P.

    12(b)(6);

2.  it erred when it ruled Massachusetts law does not require unity of the mortgage and

    underlying note for a valid foreclosure;

3.  it erred when it ruled the Trustee lacked standing to contest the MERS assignment

    and to assert a claim of unjust enrichment;

4.  it erred when it found MERS could validly assign the Mortgage and Confirmatory

    Mortgage to HSBC;

5.  it erred when it failed to determine the validity, priority, and extent of the mortgages[3]

---

[2] 28 U.S.C. § 158(a) grants the District Court jurisdiction to hear appeals from "final judgments, orders, and decrees" of the Bankruptcy Court.

[3] "The mortgages" refers to the Mortgage, the Second Mortgage, and the Confirmatory Mortgage. The Mortgage and Confirmatory Mortgage refer to the mortgage, and, as the Bankruptcy Court noted "the trustee's capacity to avoid

in question;

6. it erred when it ruled none of the mortgages in question could be avoided under 11 U.S.C. § 544.

The Trustee contends that, because of these errors, the Bankruptcy Court's decision granting the Defendant's Motion to Dismiss should be reversed. For the reasons set forth below the decision of the Bankruptcy Court is affirmed.

### Discussion

#### *Standard of Review*

When reviewing an appeal from an order of the Bankruptcy Court, the District Court reviews conclusions of law *de novo*. *In re Chestnut Hill Mortg. Corp.*, 158 B.R. 547, 549 (D. Mass. 1993). Questions of fact of reviewed for clear error, and the Court must accept the Bankruptcy Judge's factual findings unless they are "clearly erroneous." *Id.*

#### *The Bankruptcy Court's Application of the Standard for a 12(b)(6) Motion to Dismiss*

The Trustee argues that the Bankruptcy Judge did not properly apply the standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6). A motion to dismiss should be granted unless the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The court must "take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). However, a court need not accept a fact that has been "conclusively contradicted by plaintiffs' concessions or otherwise." *Chongris v. Bd. of Appeals of Town of Andover*, 811 F.2d 36, 37 (1st Cir. 1987). A court is also "not

---

the second mortgage depends on his ability to avoid the first. If the [Mortgage] survives the trustee's attack, its foreclosure will wipe out the second." As this Court affirms the Bankruptcy Court's ruling that the Mortgage does survive, "there is no need to further address the validity of the second."

bound to accept legal conclusions couched in fact." *In re DiVittorio*, 430 B.R. 26, 44 (Bankr. D. Mass. 2010).

The Trustee lists a number of facts which he contends show plausible grounds for relief if taken as true, which the court is required to when deciding on a motion to dismiss. Some of the "facts" Trustee lists are actually "legal conclusions couched in fact," which the court is not required to accept as true. *In re DiVittorio*, 430 B.R. at 44. The Memorandum of Decision on Defendant's Motion to Dismiss issued by the Bankruptcy Court clearly shows the Bankruptcy Judge did take the actual facts in the Trustee's complaint as true, and determined that, even if true, the facts did not give rise to a claim under the law. Thus the Bankruptcy Court correctly applied the 12(b)(6) standard in making its decision.

<u>*Validity of Foreclosure Without the Note*</u>

The Trustee argues that the Bankruptcy Court erred when it found that Massachusetts law does not require unity of the mortgage and underlying note for a valid foreclosure. The SJC recently addressed this very issue in *Eaton v. Fed. Nat. Mortg. Ass'n*. 462 Mass. 569 (2012); *see In re Marron*, 485 B.R. 485 (D. Mass. 2012). In *Eaton*, the SJC resolves a long debate regarding this issue, finding the "mortgagee" entitled to foreclose is "the person or entity then holding the mortgage and also either holding the mortgage note or acting on behalf of the note holder." 462 Mass. at 571.

However, the SJC goes on to explain that, because of the ambiguity on the issue prior to this decision, many lawyers or other authorities have, in good faith, rendered opinions that one holding only the mortgage, and not the note, could validly foreclose. *Eaton*, 462 Mass. at 588. Due to these "exceptional circumstances," the SJC explicitly states that the ruling in *Eaton* regarding the note for both the mortgage and the note will only apply to foreclosure sales for

which notice has been given after the date of the opinion, June 22, 2012.  *Id*. at 588-89.

In this case, notice was given before the *Eaton* opinion, making HSBC a "pre-Eaton mortgagee" which was "entitled to foreclose even without proof that it was also the note holder or its agent."  *In re Marron*, 485 B.R. 485 (D. Mass. 2012) (quoting *Woods v. Wells Fargo Bank, N.A.,* 2012 WL 2577580, at *2 (D. Mass. 2012); *see also Koufos v. U.S. Bank, N.A.*, 2013 WL 1189502, at *11 (D. Mass. 2013) ("The Supreme Judicial Court was surely aware that other cases like Eaton were in the trial court pipeline and could have shaped its holding accordingly to apply to those pending cases. It did not, and instead the Supreme Judicial Court chose to…apply its ruling only to cases where 'the mandatory notice of sale has been given after the date of t[he Eaton] opinion.'") (quoting *Eaton*, 462 Mass. at 588-89).  Therefore, the Bankruptcy Court correctly ruled that HSBC could validly foreclose without proof it also held the note, and will not be reversed on this basis.

<u>*The Trustee's Standing*</u>

The Trustee argues the Bankruptcy Court erred in holding the Trustee did not have standing to contest the MERS assignments. The Bankruptcy Court held that Trustee lacked standing to contest the assignment because the assignment did not affect the validity of the underlying mortgage and thus an attack on the assignment did not benefit the bankruptcy estate. The First Circuit recently addressed this issue as a matter of first impression, noting the disagreement among courts within the circuit.  *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282, 289 (1st Cir. 2013).  Ultimately, the Court in *Culhane* held "that Massachusetts mortgagors…have standing to challenge a mortgage assignment."  *Id*. at 290.  The Court reasoned that in Massachusetts a mortgagor has a "right to challenge a foreclosing entity's status qua mortgagee" and that this may "require challenging the validity of an assignment that purports

to transfer the mortgage." *Id.* at 291.  This reasoning applies to the Trustee asserting challenges on behalf of the mortgagors' bankruptcy estate. The Bankruptcy Court erred in holding the Trustee did not have standing to contest the MERS assignment. However, because this Court agrees with the Bankruptcy Court's finding that the assignment was valid, the Bankruptcy Court's decision will not be reversed on the basis of this error.

The Trustee also contests the Bankruptcy Court's holding that the Trustee lacked standing to assert the claim for unjust enrichment. "A claim for unjust enrichment is grounded in the principle that '[a] person who has been unjustly enriched at the expense of another is required to make restitution *to the other.*'"  *In re Bailey*, 437 B.R. 721, 730 (Bankr. D. Mass. 2010) (emphasis in original) (quoting *Nat'l Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co.*, 318 Mass. 142, 146 (1945)).  In *Bailey*, as here, a debtor brought a claim for unjust enrichment on the basis that the debtor had made payments to an entity the debtor claimed did not hold the mortgage.  *Id.* at 731.  The Court dismissed the claim, holding that if another entity actually held the mortgage, that entity, not the debtor, was the one who might have a claim for unjust enrichment.  *Id.*  The same is true is this almost identical situation, where the Trustee brings a claim for unjust enrichment arguing some entity other than HSBC held the Mortgage.  As in *Bailey*, that other entity, not the Trustee, is the one with standing to bring an unjust enrichment claim.  *Id.*  The Bankruptcy Court did not err in holding the Trustee lacked standing to bring the unjust enrichment claim.

### *Validity of the Assignment*

The Bankruptcy Court found that even if the Trustee had standing to contest the assignments from MERS to HSBC, these assignments were valid. The Trustee contests that finding, arguing that MERS held only bare legal title and thus had no interest to assign without

authorization from the noteholder, Fieldstone, and also that MERS could not make the assignment without authorization from Fieldstone's Bankruptcy Estate.  Courts have consistently held "that MERS has the authority to assign mortgages under Massachusetts law."  *In re Marron*, 485 B.R. at 489 (citing *Kiah v. Aurora Loan Serv., LLC*, 2011 WL 841282, at *8 (D. Mass. 2011); *Rosa v. Mortgage Elec. Sys.*, Inc., 821 F.Supp.2d 423, 429 (D. Mass. 2011); *Culhane v. Aurora Loan Serv. of Neb.*, 826 F.Supp.2d 352, 373 (D. Mass. 2011)).  In *Kiah*, the Court explicitly rejected the argument made here that MERS did not have the capacity to assign the mortgage because it did not have a beneficial interest.  2011 WL 841282, at *8.  Nowhere in these cases is it held that authorization from the noteholder is required for MERS to have this capacity to assign.  The cases show that MERS, as "nominee for Fieldstone and its successors and assigns" had the capacity to validly assign the Mortgage.

Fieldstone's bankruptcy filing does not affect this. Courts have held that bankruptcy and even dissolution of a noteholder do "not affect MERS' authority to assign a mortgage."  *Rosa*, 821 F.Supp.2d at 431, *see also In re Marron*, 485 B.R. at 489 ("[T]he Bankruptcy Court did not err when it ruled that MERS remained the mortgagee in its capacity as trustee and as nominee for whomever happened to own the note and that the assignment to HSBC was therefore valid despite Fieldstone's bankruptcy.") (internal quotation omitted); *Kiah*, 2011 WL 841282, at *4 (finding bankruptcy and dissolution of lender would not prevent MERS, as nominee for lender and its successor and assigns, from transferring a mortgage).  MERS was not, as the Trustee claims, required to seek permission from the bankruptcy court before making this assignment. Such authorization "is required only if an assignment is made 'outside the ordinary course of business,'" which was not the case here.  *In re Marron*, 854 B.R. at 489-90 (quoting *Chalgreen v. Deutsche Bank Nat. Trust Co et al. (In re Chalgreen)*, 2011 WL 4753528 at *8 (Bankr. N. D.

Cal. 2011).  Accordingly, this Court affirms the Bankruptcy Court's ruling that MERS validly
assigned the Mortgage to HSBC.

### *Failure to Address the Claim that HSBC Lacked Standing to File a Complaint in Land Court*

The Trustee claims the Bankruptcy Court erred by when it failed to determine the
validity, priority, and extent of the mortgages. He argues it did this by failing to address the
Trustee's allegation that HSBC lacked standing to file the Land Court Complaint because U.S.
Bank, not HSBC, owned the Fieldstone Mortgage Investment Trust Series 2005-2. The
Bankruptcy Court did, albeit somewhat indirectly, address this claim when it determined MERS
validly assigned the Mortgage to HSBC. If MERS validly assigned the Mortgage to HSBC, then,
as a matter of law, HSBC had a claim against the Property and thus had standing to file a
complaint in land court to reform the Mortgage. The C-Bass bankruptcy proceeding in 2010,
over a year after the Mortgage assignment, is not relevant to that determination. Therefore, the
Bankruptcy Court will not be reversed for failing to address this issue.

### *Trustee's Power Under 11 U.S.C. § 544 to Avoid the Mortgages*

Finally, the Trustee argues the Bankruptcy Court erred when it ruled the Trustee could
not avoid any of the mortgages under 11 U.S.C. § 544. The Bankruptcy Court dismissed this
claim because the Trustee failed to give any facts showing how the lien could be avoided under §
544. The Bankruptcy Court further noted the mortgages could not be avoided due to an invalid
transfer, because this would not affect the underlying mortgage, nor could they be avoided
because the mortgage was not held at all times by the noteholder.

The Bankruptcy Court correctly held that the Trustee did not meet the pleading
requirements for this claim under *Iqbal* and *Twombly*.  *Iqbal*, 556 U.S. at 678 (holding that a
plaintiff must plead "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.") (citing *Twombly*, 550 U.S. at 556).  In his complaint, the Trustee merely cites the relevant statute and states "the 2005 Mortgage, the Confirmatory Mortgage and the Second Mortgage are each subject to the Trustee's powers under 11 U.S.C. § 544."  That is a legal conclusion rather than a fact, which is not enough to state a claim.  *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555).  Even in his reply brief, the Trustee does not point to any specific facts to support this claim, only stating "the Trustee has set forth numerous factual statements in the Complaint to support his claim for relief under 11 U.S.C. §544."

Even if the Trustee had properly pleaded this claim, it would fail. 11 U.S.C. § 544 gives the Trustee the rights and power of a judicial lien creditor, judgment creditor, or bona fide purchaser to avoid the claims of a competing lien creditor.  The Trustee has this power subject to the same constructive knowledge imposed on such creditors and purchasers under the law.  *In re Daylight Dairy Products, Inc.*, 125 B.R. 1, 3 (Bankr. D. Mass. 1991).  Here, the mortgages were all properly recording, giving a hypothetical creditor notice of the security interest.  *See In re D & S Contractors, Inc.*, 422 B.R. 1, 5 (Bankr. D. Mass. 2010) (Chapter 7 trustee, as hypothetical good-faith purchaser under [11 U.S.C. § 544], was deemed to have notice of mortgage executed by corporate debtor where mortgage was properly recorded).  The Trustee's argument that the Mortgage would be inferior to the Trustee as a hypothetical creditor because HSBC did not possess the underlying note or because the assignment was invalid fails for the reasons given above.[4]

---

[4] In the above section, this Court explained that unity of the note and mortgage were not necessary for the Mortgage to be enforceable and that MERS validly assigned the Mortgage to HSBC.

## **Conclusion**

For the foregoing reasons, this Court ***affirms*** the Bankruptcy Court's ruling granting the

Defendant's Motion to Dismiss on all counts.

**SO ORDERED**.

/s/ **Timothy S. Hillman**
TIMOTHY S. HILLMAN
DISTRICT JUDGE